JOHN ATKINSON, Appellant, v. JOHN M. SCHOONMAKER ET AL., Respondents.

### June 20, 1882.

A. agreed to pay B. a certain price per bushel for hauling all coal sold by A. to C. The court appointed a receiver who took charge of C.'s business, and under order of court purchased coal of A. and employed him to do the hauling. *Held*, that on these facts, B. had no right of action against A. for a breach of his contract.

APPEAL from the St. Louis Circuit Court, HORNER, J.
*Affirmed.*

J. B. WOODWARD and DAVIS & SMITH, for the appellant.
H. A. & C. A. CLOVER, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

Plaintiff seeks to recover damages for an alleged breach of a contract which appears in the following proposal and its acceptance, viz. : —

"ST. LOUIS, Mo., February 21, 1876.
"*William H. Brown, Esq., Pittsburg, Penn.*

"DEAR SIR: I would hereby respectfully propose to haul coal from landing (foot of Chouteau Avenue) to yard of St. Louis Gas-Light Company, on the following terms, viz. : —

"All coal that you may deliver to said St. Louis Gas Light Company during the present year (1876), at the rate of two cents per bushel (of seventy-six pounds).

"All coal that you may deliver to said St. Louis Gas-Light Company during the year 1877, at the rate of one and three-fourths (1¾ c.) cents per bushel (of seventy-six pounds); all coal that you may deliver to said St. Louis Gas-Light Company during the year one thousand eight hundred and seventy-eight (1878), at the rate of one and

three-fourths (1¾c.) cents per bushel (of seventy-six pounds).

"Yours, very respectfully,

"JOHN ATKINSON."

On the face of the above letter, the following appears:

"Accepted, subject to any changes made in the manner of delivery than now adopted by the St. Louis Gas-Light Company. This contract-price to cover all expense as to unloading and pumping of barges, while in landing, we to furnish floats, lines, chains, and all necessary equipment for their safe and proper unloading, and a responsible watchman to look after the same.

"W. H. BROWN,
"J. M. SCHOONMAKER."

The amended petition alleges that this contract was performed by the parties on both sides, respectively, until March 2, 1877, on and after which the defendants refused to permit plaintiff to perform his contract; that, during the years 1877 and 1878, the defendants delivered to the St. Louis Gas-Light Company 1,717,507 bushels of coal, which, but for said refusal by the defendants, the plaintiff would have hauled in accordance with the contract. For this refusal and violation of the agreement, plaintiff asks damages in the sum of $30,000.

It appears that, in June, 1876, in a cause pending in the St. Louis Circuit Court, wherein the city of St. Louis was plaintiff, and the St. Louis Gas-Light Company defendant, Socrates Newman was, in due course of procedure, appointed receiver of all the property and affairs of the Gas-Light Company, with full power to do all its manufacturing and lighting, and to carry on all its business, under the approval of the court, until otherwise ordered by the proper judicial authority. At the same time, the Gas-

Light Company was enjoined and restrained from further manufacturing or selling gas, and from conducting, managing, or prosecuting any business as a corporation. Prior to this, on November 26, 1875, a contract was made between the Gas-Light Company and the present defendants, whereby the defendants were to furnish the company with all the Pittsburg coal it might require for three years from January 1, 1876, to be no less than 500,000 bushels in 1876, and 900,000 bushels in each of the two following years. On June 7, 1876, the circuit court, on application of the receiver, made an order directing him to adopt and carry out, on his part, the undertakings of the Gas-Light Company in the contract with these defendants of November 26, 1875, to pay to these defendants the sums due for coal already delivered, and to continue to receive coal from them upon the terms of the contract. On March 2, 1877, the same court made an order directing the receiver to contract with these defendants for the hauling of the coal from the barges to the yard by the wagons and employees of the receiver, at the price of one and three-quarter cents per bushel. It seems to have been in consequence of the last-mentioned order, and the contract made in pursuance thereof, that the hauling by the plaintiff was discontinued. Upon the trial of this cause, there was a verdict for the defendants.

We are favored with very able arguments on both sides of this controversy, in which the discussion takes a wide range covering the powers of the courts over contracts and parties, the position and duties of the receiver as a substitute for the corporation, and other matters which might be of vital import if it were once admitted that the plaintiff's interpretation of the contract sued on is correct. But, as we cannot indorse that interpretation, we find that the whole controversy must be determined by a solution of the question whether the contract, as we understand it, has in fact been violated or departed from in any way at all?

If the exclusion of the plaintiff from the hauling of coal from the barges after March 2, 1877, did not deprive him of any right secured by the terms of his contract, he has no cause of action.

The plaintiff insists on interpreting the present contract by the intent and effects of the contract of November 26, 1875, between the Gas-Light Company and the defendants. The contract sued on was made, he says, with reference to the other, and was intended to apply to all the coal that should be brought to the landing by defendants for the use of the Gas-Light Company or its representatives in the manufacturing of gas during the years mentioned in both contracts. How the plaintiff can claim any sort of right, privilege, or benefit out of a contract to which he has never been a party, it is not easy to perceive. His own written contract contains no reference to it. If the language of the proposal and acceptance were obscure or ambiguous, so as to be unintelligible, except by the light of surrounding circumstances, or if upon their face it appeared that the whole contract was not therein expressed, there might be some propriety in looking to extraneous aids, within certain limits, in order to give effect to what would otherwise be inoperative. But the contrary of each of these conditions is here conspicuously present. The language is clear, direct, and unmistakable. Nothing is left to be agreed upon elsewhere or thereafter. It is impossible to go outside of the two writings for the undertakings of the parties respectively, or the measure of the right of either, without setting aside the long-established rules against varying, diminishing, or adding to a complete written contract, by parol testimony.

The defendants agree that the plaintiff shall haul from the landing, at the foot of Chouteau Avenue, to the Gas-Light Company's yard, all coal that the defendants may, during a specified period, deliver to the Gas-Light Company. This means that the plaintiff will be the defend-

ant's agent through whom will be effectuated the delivery by the defendant to the company. After March 2, 1877, which was within the period, the defendants did not deliver any coal to the Gas-Light Company, but they did deliver coal at the yard of the company to Socrates Newman, receiver.

A delivery at the place A. to the person B., is not a delivery at the place A. to the person C. Nor can the description of one of such deliveries be by any means substituted for that of the other, unless B. and C. be one and the same person. It must, therefore, be shown that the Gas-Light Company and Socrates Newman, receiver, were one and the same, within the descriptive terms of the contract, or else there was no coal delivered by the defendants, which the contract empowered the plaintiff to haul on or after March 2, 1877.

No act of the receiver was the act of the Gas-Light Company done through him. So far from it, the corporation was expressly forbidden to do any act whatever by a representative or otherwise. No coal could be delivered to the company, because it had not the capacity to receive any. If the receiver did any act in fulfilment of precedent obligations of the company, he did it as receiver, under the direction of the court, and not as the Gas-Light Company, or as its representative. It seems to have been considered necessary to obtain an order of the court to enable the receiver to avail himself of the contract for the supply of coal, which had been made by the corporation before him, and which, in point of time, was still subsisting. It was understood that, without a new agreement, the contractors for furnishing coal to the company, would not be bound to furnish coal to the receiver. Such an idea would never have been entertained in the case of an administrator or other representative agent. But we are not here to try the question whether the receiver was bound to carry out a contract made by the corporation. None such was made with the plaintiff. We are dealing only with the force of

descriptive terms in the contract sued on to ascertain who is meant by them.   Suppose the Gas-Light Company had sold and delivered its entire possessions and business to a private individual or to another corporation, would the purchaser, without an express undertaking to that effect, have been bound to carry out the executory contracts of the vendor? Surely not — and why? Because the other contracting party's engagement was with the vendor and not with the purchaser.   The receiver in the present instance stands exactly in the position of a purchaser, for the time being. The defendants, in contracting to deliver coal to the Gas-Light Company, did not contract to deliver it to a receiver, and cannot be compelled to do so unless by the terms of his appointment he became invested as assignee with the rights of action of his predecessor.   But this very element of assignment adds a demonstration of severance between the corporation and the receiver, in all matters of mere description.   A corporation cannot assign to itself.   Assignment may carry a right over from the holder to the assignee.   But a description of the original holder, as description, will not include the assignee.

If the agreement in this case had provided for the plaintiff's right to haul all coal which the defendants might deliver at the yard of the Gas-Light Company, or all coal which they might deliver in pursuance of their contract of November 26, 1875, its descriptive terms might well apply to the coal which was delivered to the receiver, after his adoption of the November contract.   But it is not so declared, nor is it implied in anything that is declared.

We are of opinion that the defendant's refusal of permission to the plaintiff to haul coal which they delivered under the new arrangement with the receiver, was not a denial of any right secured to the plaintiff by the contract sued on.   The judgment is therefore affirmed.   All the judges concur.